UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENZEL SAMONTA RIVERS,

                Plaintiff,

v.                                   Case No. 17-cv-1496-pp

DOYAL JOHNSON, *et al.*,

                Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT AS TO DEFENDANT KAST ONLY (DKT. NO. 49), AND ORDERING DEFENDANT JOHNSON TO SUBMIT SUPPLEMENTAL INFORMATION ADDRESSING SPECIFIC FACTS UNDER FED. R. CIV. P. 56(e)**

Plaintiff Denzel Rivers, who is representing himself, filed a lawsuit under 42 U.S.C. §1983, alleging that the defendants violated his civil rights at the Waupun Correctional Institution. Dkt. No. 1. Magistrate Judge William E. Duffin screened the complaint and allowed the plaintiff to proceed with an Eighth Amendment claim that defendants Doyal Johnson and Loison Kast showed deliberate indifference to his health and safety when they failed to respond to his complaints of his suicidal thoughts on April 20, 2017. Dkt. No. 16 at 5. The court grants the defendants' motion for summary judgment as to *defendant Kast only*, dkt. no. 49, dismisses defendant Kast and orders defendant Johnson to submit supplemental information under Federal Rule of Civil Procedure 56(e).

**I.    Facts**

The court takes facts from the defendants' proposed findings of fact, dkt. no. 51, the plaintiff's proposed findings of fact, dkt. no. 65, and the plaintiff's

1

complaint, dkt. no. 1, which the court must construe as an affidavit at the summary judgment stage (Ford v. Wilson, 90 F.3d 245, 246-47 (7th Cir. 1996)).

The plaintiff is an inmate at Waupun. Dkt. No. 51 at ¶1. Loison Kast and Doyal Johnson are correctional officers at Waupun. Id. at ¶2. Kast was "acting Unit Sergeant" on April 20, 2017; Johnson conducted "institution count" and passed out medication that day. Dkt. No. 65 at ¶¶4-5.

The plaintiff was housed in North Cell Hall cell D-37. Id. at ¶¶1-2. The plaintiff states that he "was under crisis" and having suicidal thoughts. Id. at ¶8. Around 8:22 p.m., the plaintiff asked inmate Scott Meritns to tell Kast that the plaintiff needed to go to the Psychological Services Unit ("PSU"). Id. at ¶9. Meritns told the plaintiff that he had relayed the message. Dkt No. 64 at 1. The plaintiff asserts that he "received no immediate assistance from Defendant Sergeant Kast." Dkt. No. 65 at ¶10. The plaintiff then placed a sign on his cell door that stated, "Call PSU." Id. at ¶11.

About forty minutes later, at around 9:00 p.m., Johnson conducted institution count. Id. at ¶12. The plaintiff loudly told Johnson that he was suicidal and on the verge of cutting himself. Id. at ¶14. Johnson continued conducting institution count. Id. at ¶15.

After completing institution count, Johnson started to pass out "controlled" medication. Id. at ¶16. The plaintiff told Johnson a second time that he was suicidal. Id. at ¶17. Johnson continued with the medication pass. Id. at ¶19. After completing the controlled medication pass, Johnson began conducting a "non-controlled" medication pass. Id. at ¶19. For a third time, the plaintiff told

Johnson that he was suicidal, but Johnson continued with the medication pass. Id. at ¶¶20-21.

The plaintiff then used his razor "in an attempt to slice his vein three times." Id. at ¶22. He used his sheet to "construct a noose in an attempt to tie it around his neck to commit suicide." Id. at ¶23. The parties dispute the severity of the plaintiff's injuries. The defendants assert that the plaintiff inflicted only three "superficial scratches" on his arms. Dkt. No. 51 at ¶¶3-4, 7-8. The plaintiff says that his injuries caused "noticeable" bleeding and took "awhile" to treat. Dkt. No. 67 at ¶¶3-4.

According to the plaintiff, Officer Alfred N. Wittrien (not a defendant) then told Officer Christopher Winters (not a defendant) about the plaintiff's "crisis." Id. at ¶24. At around 9:30 pm, Winters went to the plaintiff's cell. Id. at ¶25. The plaintiff states that there was a "noticeable amount" of blood on his forearms, shirt and hands. Id. He told Winters that he heard voices telling him to hurt himself. Id. at ¶26.

Someone told Dr. Kristina DeBlanc (not a defendant) that the plaintiff had cut himself and had constructed a noose in his cell. Id. at ¶27. Registered Nurse Mark Jensen (not a defendant) treated the plaintiff's injuries. Id. at ¶¶28-29. Dr. DeBlanc placed the plaintiff on observation. Id. at ¶31.

The following day (April 21, 2017), Dr. DeBlanc examined the plaintiff in observation. Dkt. No. 51 at ¶5. She wrote in her notes that the plaintiff had inflicted "three surface level scratches near the webbing on his hand between thumb and fingers." Dkt. No. 53-1 at 3. She noted that the plaintiff had become

3

"agitated after being refused to shower, stating that he is approved to shower with other innates who identify as transgendered/Gender Dysphoric." Id. He also told DeBlanc that he'd cut himself, and that he'd constructed a noose in his cell "though he had not attempted to use it." Id. He told DeBlanc that he still was feeling suicidal and asked to remain in observation. Id.

The day after that (April 22, 2017), Dr. Torria Van Buren (not a defendant) examined the plaintiff. Dkt. No. 51 at ¶6. She wrote in her notes that the plaintiff inflicted "three superficial cuts to his left hand." Dkt. No. 53-1 at 3. She noted that the plaintiff "had engaged in self-harm in order to 'relieve stress' . . . he had been upset about not getting a shower at the same time as the Transition inmates." Id. The plaintiff's injuries did not require any follow-up treatment. Dkt. No. 51 at ¶7.

**II.   Discussion**

    A.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Eighth Amendment Deliberate Indifference

The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To prevail on an Eighth Amendment claim, the plaintiff must establish that: "(1) the harm that befell him was objectively, sufficiently serious, and posed a substantial risk to his health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to his health and safety." Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006) (citing Farmer, 511 U.S. at 832).

1. *Objectively Serious Risk*

The Seventh Circuit has held that attempted suicide is a substantial risk to an inmate's health or safety. Sanville v. McCaughtry, 266 F.3d 724, 733 (7th

5

Cir. 2001). The court stated that "[i]t would be difficult to think of a more serious deprivation than to be deprived of life." Id. "However, the Seventh Circuit has yet to fully tackle the question of insincere suicide attempts or attempts that are superficial in nature, especially where the inmate appears to be trying to manipulate prison officials to gain some sort of privilege, advantage, or change in circumstance." Conner v. Rubin-Asch, No. 17-CV-1388, 2019 WL 1385205, at *5 (E.D. Wis. Mar. 27, 2019).

The defendants assert that the plaintiff didn't sincerely intend to kill himself, implying that there was no objective, serious and substantial risk to the plaintiff's health or safety. To support this position, they emphasize that after incident, the plaintiff appears to have inflicted only "superficial scratches" on himself, and that it appears that he did so to obtain permission to shower with transgender inmates, rather than general population inmates. Dkt. No. 50 at 4-6. The defendants attach evidence showing that Dr. DeBlanc described the plaintiff's injuries as "three surface level scratches near the webbing on his hand between thumb and fingers," and that Dr. Van Buren described the plaintiff's injuries as "three superficial cuts to his left hand." See Dkt. No. 53-1 at 2-3.

The plaintiff disagrees with the defendant's description of his condition and injury. He states that he was "under crisis" and suicidal on April 20, 2017. Dkt. No. 65 at ¶8. As to his injuries, he says that he used a razor "to slice his vein three times," dkt. no. 65 at ¶22, and that his injuries caused "noticeable" bleeding that took "awhile" to treat, dkt. no. 67 at ¶¶3-4.

6

The plaintiff's account of his injury conflicts with the opinions of the medical professionals who treated him, and as one district court has noted, "in light of [the plaintiff's] failure to offer any explanation for why [medical professionals] would lie about his condition, a jury may well conclude that [the plaintiff's] version of events is unbelievable." Williams v. Reyes, No. 17-cv-452-JDP, 2018 WL 6704747, at *2 (W.D. Wis. Dec. 20, 2018). But the question isn't whether harm occurred; it is whether there was an objectively serious risk that harm would occur. As the court explains below, the answer to that question depends to some extent on evidence this court doesn't have before it.

2. *Deliberate Indifference*

"Where the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide[,] and (2) intentionally disregarded the risk." Collins, 462 F.3d at 761 (citing Matos *el rel.* Matos v. O'Sullivan, 335 F.3d 553, 556 (7th Cir. 2003). The first prong of the subjective test—whether the prison official knew of the imminent suicide attempt—is a question of fact. Sanville, 266 F.3d at 737. Even if a plaintiff proves the first prong and demonstrates that the prison official knew of the imminent risk of suicide, the plaintiff still must prove the second prong—that the prison official deliberately disregarded that risk. Prison officials can show that even though they were aware, "they responded reasonably to [the substantial risk], 'even if the harm ultimately was not averted.'" Id. (quoting Farmer, 511 U.S. at 844-45). "While prison staff are under an obligation to

protect inmates from self-harm . . . [a] risk of future harm must be 'sure or very likely' to give rise to 'sufficiently imminent dangers' before an official can be liable for ignoring that risk." Shipp v. Wolf, No. 17-C-560, 2018 WL 2416579, at *2 (E.D. Wis. May 29, 2018) (internal citations omitted); see also Sanville, 266 F.3d at 737 (noting that the defendant must be "cognizant of the significant likelihood that an inmate may imminently seek to take his own life[.]") A defendant need not "take perfect action or even reasonable action, even assuming he [or she] was aware of the suicide risk; his [or her] action must be reckless before § 1983 liability can be found." Cavalieri v. Shepard, 321 F.3d 616, 622 (7th Cir. 2003).

### a. Defendant Kast

The plaintiff has not demonstrated the first prong of the subjective component as to defendant Kast, because he has not provided facts from which a reasonable jury could conclude that Kast was aware that the plaintiff was imminently likely to try to take his own life. The plaintiff's only allegation against Kast is that the plaintiff told inmate Meritns to tell Kast that the plaintiff was suicidal. While the plaintiff claims that Meritns relayed this message to Kast, the plaintiff does not say how he knows that. The plaintiff doesn't allege, for example, that he saw or heard Meritns relay the message to Kast, nor does he present a statement from Meritns swearing that Meritns relayed the message to Kast. See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.") Based on the record, no reasonable jury could

8

conclude that Kast knew that the plaintiff was at substantial risk of trying to take his own life and showed deliberate indifference toward that risk.

The court will grant the defendants' motion for summary judgment with respect to defendant Kast and dismiss the complaint as to Kast.

        b.        Defendant Johnson

While the language of the complaint is not clear, one could read paragraph two to state that the plaintiff was "in clinical suicide watch" on April 20, 2017. Dkt. No. 1 at ¶2. The complaint alleges that the plaintiff told Johnson at least twice that he was suicidal. Id. at 2-3. If the plaintiff was on a suicide watch, and Johnson knew that, a jury might find that his actions in ignoring the plaintiff's statements constituted deliberate indifference—especially if the plaintiff had a history of serious suicide attempts.

Because he believes that the plaintiff did not face an objectively serious risk of harm, Johnson did not bother to address the plaintiff's claims that he was in crisis and that he told Johnson twice that he was suicidal. The defendants' brief in support of the motion for summary judgment does not address these claims. Dkt. No. 50. The defendants' proposed findings of fact do not state how long the plaintiff had been at Waupun as of April 20, 2017, make no mention of the plaintiff's prior history (if any) of suicide attempts, make no mention of whether the plaintiff was under heightened observation on April 20, 2017—they do not even confirm or deny that the plaintiff told Johnson he was feeling suicidal. Dkt. No. 51. Johnson did not submit an affidavit in support of the motion for summary judgment.

In his opposition brief, the plaintiff asserted that he was "under crisis" on April 20, 2017. Dkt. No. 62 at 3. He also asserted that he "had threatened self-harm and the psychological associate considered those threats credible enough to transfer the plaintiff to an observation cell." Id. at 4. The court can't tell whether the plaintiff meant that he was under watch or observation *before* he told Johnson he was suicidal, or whether the plaintiff was referring to *past* threats he made before April 20, 2017. Either way, the defendants elected not to file a reply brief, and in their response to the plaintiff's proposed finding of fact stating that he was in crisis on April 20, the defendants responded only that the plaintiff had not supported that fact with evidence. Dkt. No. 69 at ¶8.

The fact that neither party has provided the court with information regarding the plaintiff's history of suicide attempts (serious or otherwise), or the lack of such a history, is particularly relevant given the cases the defendants cited on their motion. They state that "[d]istrict courts in Wisconsin have concluded that, without evidence of an objectively serious injury, an officer's failure to intervene is not enough to create a substantial risk of serious harm protected by the Constitution." Dkt. No. 50 at 5. Only one of the cases they cite, however, Davis v. Ghee, Case No. 14-cv-617-wmc, 2017 WL 2880869 (W.D. Wis. July 6, 2017), stands for that proposition. In Davis, the plaintiff showed a prison guard a handful of pills, reported feeling suicidal and asked to be placed on observation. Id. at *1. The defendant responded with sarcasm and left without taking the pills away from the plaintiff or trying to help him. The plaintiff swallowed the pills and was taken to the hospital. Id.

The defendant moved for summary judgment on the subjective prong of the deliberate indifference test, arguing that the plaintiff had not shown him any pills or told him that the plaintiff was suicidal. Id. The court denied the motion for summary judgment because of the parties' disputes regarding those facts but scheduled a hearing on the objective prong of the test, given that the plaintiff's own evidence indicated that he'd ingested only a small amount of Tylenol that didn't pose a risk of harm. Id. at *1-2. After the hearing, the court granted summary judgment in favor of the defendant, concluding that because the medical records showed that the plaintiff had a "non-toxic amount of Tylenol in his system" that caused "no pain, no significant symptoms" and required "no treatment," there was "no evidence that plaintiff suffered any objective risk of serious harm protected by the U.S. Constitution." Id. at *6.

The facts in Davis resemble the facts here—a plaintiff who allegedly told prison staff that he was suicidal, but whose post-incident injuries indicated that the risk the plaintiff claimed he faced had not actually existed. This court is less comfortable than the Davis court assuming that if the post-incident injury was minor, there must have been no pre-incident risk.

The defendants also cite Lindsey v. Runice, Case No. 16-cv-75, 2016 WL 2636273 (E.D. Wis. May 5, 2016). Oddly, the decision the defendants provided the court is a *screening* order, in which Judge Randa allowed a plaintiff who claimed that he'd showed prison staff pills and threatened to take them (and allegedly *did* take them while the prison staff watched) to proceed on an Eighth

11

Amendment deliberate indifference claim. This decision does not support the defendants' arguments.

Perhaps the defendants meant to attach Judge Griesbach's subsequent decision granting summary judgment in favor of the defendants. Lindsay v. Runice, Case No. 16-cv-75, Dkt. No. 46 (E.D. Wis. Apr. 10, 2017). Judge Griesbach granted summary judgment because he found that the plaintiff "chewed and swallowed the pills as soon as [the defendant] arrived," which meant that "no member of the prison staff ever had a chance to 'protect' him from taking the pills." Id. at 5-6. While Judge Griesbach also found that there was no evidence that the plaintiff had harmed himself, he framed his decision this way:

> [I]t appears that taking seven 1.5 mg Risperidone pills was not a threat to the Plaintiff's life, and neither did it cause any appreciable distress. The evidence shows that after the Plaintiff was subdued, he saw a nurse and the prison doctor, and then was taken to the hospital, apparently as a precautionary measure. He was administered charcoal, and his blood work was normal. In short, there is no evidence he suffered any pain or damage from ingesting the pills. The unstated premise of this entire action is that guards have some kid of duty to prevent inmates from taking pills. That is entirely too specific. Instead, guards have a duty—assuming they appreciate the risk—to prevent inmates from causing serious *harm* to themselves. Pills are not inherently harmful simply because they are pills. The mere fact that someone ingests seven pills—which could include aspirin, ibuprofen, iron, vitamin C, antacids, or any number of other kinds of pills—does not, in and of itself, create an injury of constitutional proportions. This means two things. First, the condition [the plaintiff] created by taking the pills was not an objectively serious medical condition. Second, none of the officers could have known that taking a given number of unidentified (at the time) pills would have caused serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (the plaintiff must show that his condition was objectively serious, and that state officials acted with the "requisite culpable state of mind, deliberate indifference," which is a subjective standard.) Absent any evidence of a serious risk of harm, there is no injury under the Eighth Amendment.

Id. at 6-7.

This case differs from Lindsey. The plaintiff alleges—with no response from Johnson—that, at least twice before the plaintiff cut himself, he told Johnson he felt suicidal, and asked him to contact the psych unit. If that allegation is true, it means that the plaintiff—unlike the plaintiff in Lindsey—gave Johnson the opportunity to intervene. The plaintiff also alleges that he told Johnson he was going to cut himself. Perhaps seeing a plaintiff with unidentified pills might not put prison staff on notice that the plaintiff was at risk of harming himself—the pills might be Tylenol, or vitamins, or anti-psychotic pills like Risperidone. But hearing that an inmate plans to cut himself with a sharp object might, depending on the circumstances, put prison staff on notice that a plaintiff intended to injure himself.

From outside of Wisconsin, the defendants cite Troupe v. End, Case No. 13-cv-5306-EFS, 2015 WL 3994282 (E.D. Wash. July 1, 2015). The court in Troupe granted summary judgment in favor of the defendants in a case in which the plaintiff cut himself. But the plaintiff in Troupe had "a documented history of obstructive, manipulative, and staff-splitting behaviors and frequently threaten[ed] self-harm to achieve his objectives." Id. at *2. He had a history of "declaring emergencies for non-emergent reasons." Id. at *3. At the time of the events the plaintiff described, he was in the Intensive Management Unit under a sharps restriction. Id. at *5. The defendants checked on the plaintiff regularly, despite his history, responded when he said he felt suicidal/self-harmful, and

had checked on the plaintiff only five minutes before the plaintiff cut himself. Id. at 5-6. In addition, the plaintiff did not assert that he was trying to kill himself—he asserted "that his self-harming behavior was due to being placed in a new cell that was filthy . . . ." Id. at *7. Under these facts, no reasonable jury could have found that there was a serious medical need, or that the officers were deliberately indifferent to it.

Finally, the defendants cite West v. Warnock, Case No. CV605-047, 2005 WL 2237609 (S.D. Ga. Aug. 24, 2005). The magistrate judge in West recommended that the district court deny the plaintiff's motion for injunctive relief, in a case where the plaintiff had "periodically threatened or attempted to harm himself with a razor." Id. at *1. The judge found that "[o]n those occasions when Plaintiff has actually cut himself, the cuts have generally been superficial (usually to Plaintiff's abdomen), although he did cut himself more seriously on one occasion." Id. "Following each of the incidents of threatened or attempted self-harm, Plaintiff has received immediate attention from [prison] mental health staff, who have performed a face-to-face evaluation and asked Plaintiff to . . . agree not to harm himself and return to his cell." Id. In cases where the plaintiff had attempted more serious self-harm, prison staff increased his mental health classification. Id. The mental health treatment team also had "concluded that Plaintiff's attempts and threats of self-harm [were] calculated efforts by Plaintiff to get attention and to be sent to the mental health unit, at least for a short period of time." Id. at *2. Given these facts, the court concluded that the Plaintiff had

14

failed to show a substantial likelihood of success on the merits or that he faced a substantial threat of irreparable harm. Id. at *3.

The standard for granting injunctive relief is different from the summary judgment standard, and the judge in West had evidence that the plaintiff had a history of spurious attempts to harm himself and that the prison staff consistently reacted, not with deliberate indifference, but with "good faith" attempts to "protect Plaintiff's health while refusing to simply acquiesce to what they believe-in their expert judgment as mental health professionals-to be purpose manipulative behavior." Id.

This court has no evidence regarding how long the plaintiff had been in Waupun as of April 20, 2017. It has no evidence about the plaintiff's history of suicide attempts prior to April 20, 2017 (if there is such a history), and no evidence (not even an affidavit) about whether Johnson knew of that history or its lack. The court has no evidence regarding whether the plaintiff was under heightened observation on April 20, 2017, or whether Johnson knew about it if he was. That evidence is relevant to whether Johnson was aware that the plaintiff wasn't really at risk of harm.

Federal Rule Civil Procedure 56(e)(1) states that "if a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c) the court may . . . give an opportunity to properly . . . address the fact." The court will give Johnson the opportunity to properly address the plaintiff's assertions that he was on suicide/crisis watch on April 20, that Johnson had reason to know that

the plaintiff faced a substantial risk of self-harm and that Johnson ignored that risk. See Dkt. No. 65.

## III. Conclusion

The court **GRANTS** the defendants' motion for summary judgment as to defendant Kast only, dkt. no. 49, and **DISMISSES** the complaint as to defendant Kast.

The court **ORDERS** that by the end of the day on **July 12, 2019**, Johnson shall submit supplemental information addressing the facts the court has identified.

Dated in Milwaukee, Wisconsin this 6th day of June, 2019.

                                         **BY THE COURT:**

                                         **HON. PAMELA PEPPER**
                                         **United States District Judge**